IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| COLETTE MARIE WILCOX )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>NATHAN H. LYONS, ESQ., individually, and )<br>    in his official capacity as )<br>    Commonwealth Attorney )<br>    for Carroll County, Virginia, )<br>)<br>)<br>AND )<br>)<br>PHILLIP C. STEELE, ESQ., individually, and )<br>    in his official capacity as )<br>    a Deputy Commonwealth Attorney )<br>    for Carroll County, Virginia )<br>)<br>)<br>)<br>    Defendants. ) | Civil Action No. 7:17-cv-00530<br><br>**Jury Trial Demanded** |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Colette Marie Wilcox, by counsel, and states as her First Amended Complaint against Defendants Nathan H. Lyons, Esq., individually and in his official capacity as Commonwealth Attorney for Carroll County, and Phillip C. Steele, Esq., individually and in his official capacity as a Deputy Commonwealth Attorney for Carroll County, the following:

I. Jurisdiction and Venue

1. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, as a question arising under federal law, to-wit, 42 U.S.C. § 1983, specifically a violation of Ms. Wilcox's Fourteenth Amendment Equal Protection rights and a deprivation of liberty interest.

1

2. The Court has jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367, as those claims arise out of the same common nucleus of operative fact as Ms. Wilcox's federal law claims.

3. Ms. Wilcox is a resident of Bristol, Virginia.

4. Nathan H. Lyons, Esq. is the Commonwealth Attorney for Carroll County, a constitutional officer under Va. Const. Art. VII, § 4 (2017).

5. Phillip C. Steele, Esq., at all times relevant to this complaint, was employed by Mr. Lyons as a Deputy Commonwealth Attorney for Carroll County.

6. Venue is proper in this Court as the acts and/or omissions that gave rise to this Complaint occurred within the Western District of Virginia. *See* 28 U.S.C. § 1391(a)(2).

## II. Facts

7. Ms. Wilcox is an attorney licensed to practice in the Commonwealth of Virginia.

8. On or around May 5, 2014, Ms. Wilcox began working at Carroll County Commonwealth Attorney's Office (hereinafter "the Office") as a Deputy Commonwealth Attorney.

9. As a Deputy Commonwealth Attorney, Ms. Wilcox represented Carroll County in criminal proceedings before the courts of Carroll County.

10. Mr. Lyons was Carroll County Commonwealth's Attorney during the duration of Ms. Wilcox's employment.

11. During the course of Ms. Wilcox's employment, she worked with co-worker Mr. Steele, also a Deputy Commonwealth Attorney.

12. On or around the morning of November 30, 2015, Ms. Wilcox was standing in the office of Victim Witness Director Teddy Felts. She stood near a doorway that led to the Office kitchen.

13. Chief Deputy Commonwealth Attorney Mike D. Jones, Esq. was also present in Mr. Felts' office.

14. Mr. Felts sat at his desk and Mr. Jones stood nearby in the threshold of his office door. Mr. Jones, a supervisor of Ms. Wilcox in the chain of command at the Office, was standing in such a way as to be able to observe all activity then occurring in Mr. Felts' office and behind Ms. Wilcox in the Office kitchen.

15. Mr. Steele stood behind Ms. Wilcox but was standing in the kitchen.

16. The following is a diagram of the room and the individuals present:



17. Mr. Steele, Mr. Felts, Mr. Jones, and Ms. Wilcox engaged in a conversation regarding Mr. Felts' relatives. Mr. Felts recounted how a female member of his family was being mistreated and that he was attempting to stand up against the individuals involved to correct the situation. Ms. Wilcox informed Mr. Felts that he was right to stand up for his female relative.

18. At that time, while Ms. Wilcox and Mr. Felts discussed Mr. Felts' female relative experiencing rough-housing and unwanted violence, Mr. Steele forcefully and violently punched Ms. Wilcox in her right arm/shoulder with a closed fist.

19. Mr. Steele muttered something about women, which Ms. Wilcox understood to be a derogatory comment towards women. However, Ms. Wilcox was too shocked and hurt to recall his exact comments clearly.

20. Ms. Wilcox felt the sensation of bruising on her right shoulder as a result of Mr. Steele's battery.

21. Ms. Wilcox, stunned and suddenly afraid, asked Mr. Steele why he had forcefully and violently punched her. Both Mr. Jones and Mr. Felts remained silent.

22. Ms. Wilcox directed Mr. Steele, not to "use me as demonstrative evidence" of violence against women.

23. Ms. Wilcox immediately directed Mr. Steele to stand at least five (5) feet away from her.

24. Mr. Steele did not retreat. In fact, Mr. Steele squared up his body to Ms. Wilcox. Mr. Steele's body language indicated that he might strike Ms. Wilcox again. Ms. Wilcox reasonably anticipated another physical altercation with Mr. Steele.

25. The tone in the room had shifted so abruptly, upon information and belief, no one spoke again until Mr. Lyons entered the room.

26. Hoping to diffuse the situation and exit the situation as quickly as possible, Ms. Wilcox uttered a nervous joke regarding filing for worker's compensation for the battery that Mr. Steele had just committed upon her.

27. Before Ms. Wilcox could exit the situation, Office secretary Jennifer Spangler entered the room.

28. Ms. Wilcox directed her attention to Ms. Spangler and exclaimed that there was hostility in the room against women. Ms. Wilcox said this statement at least twice. Mr. Lyons, Mr. Steele, and Mr. Felts all heard Ms. Wilcox's comments.

29. At no time during this incident or immediately thereafter, did Mr. Lyons inquire further with Ms. Wilcox regarding her complaints.

30. Later in the day on November 30, 2015, Ms. Wilcox and Mr. Felts discussed Mr. Steele's battery upon Ms. Wilcox. Ms. Wilcox was still shaken and very upset.

31. Ms. Wilcox questioned why this occurred and was dismayed that neither Mr. Felts nor Mr. Jones immediately condemned Mr. Steele's battery or derogatory comments against women.

32. Ms. Wilcox remained tearful and upset over the incident during the entire duration of the remainder of the day. Despite her emotional state, Ms. Wilcox finished all of her court room proceedings for the day. At approximately 1:30PM on that day, Ms. Wilcox, overwhelmed and too upset to work, left for the day.

33. At approximately 4:30PM on November 30, 2015, Ms. Wilcox sent an email to Mr. Lyons detailing Mr. Steele's battery and derogatory and discriminatory comments against women.

34. On December 1, 2015, Ms. Wilcox met with Mr. Lyons to discuss her email and the incident. Ms. Wilcox expressed how she felt that the Carroll County Commonwealth Attorney's Office tolerated and/or promoted sex discrimination against women. Mr. Lyons then asked Ms. Wilcox how to resolve the situation.

35. Still in shock over the previous day's events, and given that Mr. Lyons was the supervisor, Ms. Wilcox was unsure as to the appropriate course of action.

5

36. Mr. Lyons asked Ms. Wilcox if Mr. Steele could come into the room. Ms. Wilcox was too fearful of this situation and declined. She informed Mr. Lyons that she would feel more comfortable as long as other people were present when she was in proximity to Mr. Steele. Ms. Wilcox repeated several times in this discussion that she no longer wished to ever speak with Mr. Steele on a solitary basis.

37. Mr. Lyons apologized for the Office hostility. However, upon information and belief, Mr. Lyons did not take any affirmative steps to correct Mr. Steele's actions, reprimand Mr. Steele, or prevent Mr. Steele from having solitary contact with Ms. Wilcox.

38. In the afternoon of December 1, 2015, Mr. Steele stood in the doorway of Ms. Wilcox's office. He took a step inside and asked Ms. Wilcox if they could speak. Ms. Wilcox stated that she would not speak to Mr. Steele alone.

39. This upset Mr. Steele and he refused to leave Ms. Wilcox's presence. Ms. Wilcox stood, asked Mr. Steele to move, and she fled her office.

40. After work that day, Ms. Wilcox informed Mr. Lyons of the most recent incident with Mr. Steele. Ms. Wilcox again informed Mr. Lyons that if Mr. Steele sought to give her an apology, this communication needed to occur in the presence of others because she did not feel comfortable being alone with Mr. Steele.

41. As December of 2015 wore on, Ms. Wilcox's co-workers, such as Mr. Felts and Mr. Jones, distanced themselves from Ms. Wilcox.

42. On or around December 16, 2015, Ms. Wilcox attempted to improve the work environment that had seemingly ostracized her for complaining about being physical assaulted and being discriminated against based on her sex in the workplace. Ms. Wilcox gathered her courage, approached Mr. Steele's office, and informed Mr. Steele that she could talk to him.

43. Mr. Steele asked Ms. Wilcox to close his office door, but Ms. Wilcox did not do so as she was uncomfortable in the office with Mr. Steele behind closed doors.

44. Ms. Wilcox asked Mr. Steele if he had punched her on November 30, 2015.

45. Mr. Steele balled up his fist and responded, "maybe I did."

46. In order to be able to work in a less hostile work environment, Ms. Wilcox informed Mr. Steele that she wished to leave the incident in the past.

47. Ms. Wilcox made this remark in an attempt to end the harassment, discrimination, and retaliation she faced at the hands of Mr. Steele, Mr. Lyons, and other male colleagues in the Office.

48. On or around the early morning of January 20, 2016, Ms. Wilcox informed Mr. Lyons via text message that, due to snow, her children's school had been closed. Because her children's school was closed and due to the corresponding bad weather, which made her commute dangerous, Ms. Wilcox further advised that she did not plan to travel in to the Office that day.

49. Mr. Lyons did not express any negative reaction to this text message.

50. On or around the morning of January 21, 2016, Ms. Wilcox informed Mr. Lyons via text message that she would be late for work due to another school closure related to bad weather.

51. Later that afternoon, Mr. Lyons called Ms. Wilcox into his office and informed her to call and not text on snow days as they all had kids and the weather affected everyone, but stated it was "no big deal."

52. On or about January 27, 2016, Ms. Wilcox fell ill. She informed the Office that she could not attend work due to her stomach illness.

53. On January 29, 2016, still experiencing symptoms, Ms. Wilcox informed the Office that she would not be coming in until the afternoon. However, despite her illness, Ms. Willcox attended and covered all of her afternoon court room obligations that day.

54. At the end of January of 2016, Ms. Wilcox submitted her monthly timesheet to Mr. Lyons. Because Court proceedings ran late on the afternoon of January 29, 2016, Ms. Wilcox submitted her timesheet with a note indicating that fact and detailing that she had, therefore, worked a full day on January 29, 2016.

55. On or around February 12, 2016, Ms. Wilcox was at a prescheduled morning doctor's appointment. Ms. Wilcox had previously sought and was given prior permission by Mr. Lyons to attend the doctor's appointment.

56. Ms. Wilcox promptly informed Mr. Lyons that her doctor's appointment had run late and that her children's school was closing three (3) hours early due to snow.

57. On or about February 16, 2016, Mr. Lyons directed Ms. Wilcox to resubmit her January 2016 timesheet with a claim of four (4) hours of sick leave on January 29, 2016, despite Court lasting so long that day.

58. Resubmitting a timesheet was not a common practice in the Office and no other employees were required to resubmit timesheets under such circumstances.

59. On the following day, February 17, 2016, Mr. Lyons called Ms. Wilcox into his office before noon. Mr. Lyons had stated that Ms. Wilcox had used too much leave in February despite Mr. Lyons' approval of Ms. Wilcox's leave requests.

60. Mr. Lyons and Ms. Wilcox then discussed the Office policies regarding leave. Mr. Lyons informed Ms. Wilcox that she was in violation of a "state compensation board policy" of which she had no knowledge or notice.

61. At no time prior to her meeting with Mr. Lyons had Ms. Wilcox ever been provided any notice or document setting forth a "state compensation board policy."

62. Mr. Lyons informed Ms. Wilcox that he would issue to her a written reprimand. He then handed Ms. Wilcox a letter. Ms. Wilcox again stated that she did not understand the policy to which Mr. Lyons was referring. Ms. Wilcox asked Mr. Lyons whether the leave policy of Carroll County applied as that was what she had previously been led to believe.

63. Mr. Lyons failed to produce a copy of any state compensation board policy, nor detail how Ms. Wilcox had allegedly violated this policy.

64. Mr. Lyons directed Ms. Wilcox to sign the reprimand.

65. Ms. Wilcox asked if she could read the letter that Mr. Lyons had just placed in front of her. At all times, Ms. Wilcox remained professional and cordial. At no time did she raise her voice or use an improper tone of voice. Her body language conveyed attentiveness. In a professional tone, Ms. Wilcox requested a copy of the pertinent policy so she could review it.

66. Mr. Lyons then suddenly turned his back, raised his voice and stated that Ms. Wilcox was terminated for "insubordination."

67. Ms. Wilcox was stunned. The meeting had lasted no more than a few minutes and she had merely requested clarification in regards to the policies to which Mr. Lyons had referred.

68. Ms. Wilcox never refused to sign the letter that Mr. Lyons had placed in front of her. Rather, Ms. Wilcox reasonably requested time in which to read the letter, more information on the "state compensation board policy," or a copy of the policy itself.

9

69. Accordingly, on February 17, 2016, Ms. Wilcox was wrongfully terminated from employment.

70. The Carroll County Commonwealth Attorney's Office fostered an environment of intimidation and discrimination against Ms. Wilcox and other female employees.

71. Ms. Wilcox would not have been terminated from her employment from the Office but for Mr. Lyons', Mr. Steele's, and other's discriminatory animus towards Ms. Wilcox based upon her gender and sex, female.

72. The allegation by Mr. Lyons that Ms. Wilcox was guilty of insubordination was pretextual.

73. At all times during the course of her employment at the Carroll County Commonwealth Attorney's Office, Ms. Wilcox only ever exhibited excellent work performance.

74. Ms. Wilcox's unlawful termination resulted in her stigmatized and severely diminished professional reputation within Carroll County and throughout Southwest Virginia.

75. After her employment ceased, Defendant Lyons continued to intentionally apply a stigma to Ms. Wilcox's work performance in the community.

76. Specifically, Defendant Lyons petitioned the Circuit Court of Carrol County to overturn an award of unemployment benefits granted her by the Virginia Employment Commission. (See Case No. Cl 16-268).

77. The matter required lengthy briefing by the parties and oral argument that occurred before Circuit Court Judge David A. Melesco on March 29, 2017.

78. Within the publicly filed pleadings and within open court, Defendant Lyons raised the following issues:

a. Ms. Wilcox had engaged in misconduct at her place of employment as defined by Virginia Code § 60.2-618.

b. Ms. Wilcox had engaged in willful intentional insubordination to her employer.

c. Ms. Wilcox's insubordination was to such a high degree, that this single incident justified a termination from employment.

d. Ms. Wilcox had failed to follow an attendance policy.

e. Ms. Wilcox acted unreasonably regarding her job duties as a prosecutor.

79. Ms. Wilcox is a licensed attorney who regularly practices in Carrol County and the surrounding area. The stigmatizing pleadings remain at the Clerk's Office of Carrol County for public inspection by anyone.

80. Likewise, the Virginia Supreme Court's online case information website illustrates to any online viewer the names of the parties involved and the existence of pleadings.

81. The statements uttered by counsel for Defendant Lyons in open court were made in a forum regularly attended by Ms. Wilcox's peers and prospective employers.

### III. Counts

#### COUNT I: RETALIATION IN VIOLATION OF 42 U.S.C. § 1983 AGAINST BOTH DEFENDANTS

82. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

83. Ms. Wilcox identifies her gender and sex as female.

84. Ms. Wilcox has a recognized Fourteenth Amendment Equal Protection Clause right to not suffer retaliation for voicing complaints of sex discrimination and retaliation based on her gender and sex, female.

85. Mr. Lyons, at all times material hereto, was a constitutional officer of the Commonwealth of Virginia as Commonwealth Attorney, and therefore, operated under color of law.

86. Mr. Steele, at all times material hereto, was a state employee, and therefore, operated under color of law.

87. Under Fourth Circuit precedent, a public employer is liable for sex discrimination and retaliation under a Title VII framework. *See Holder v. City of Raleigh*, 867 F.2d 823 (4th Cir. 1989).

88. At all relevant times, Mr. Lyons and Mr. Steele had an obligation to maintain a work environment that was not charged with sex discrimination and hostile to Ms. Wilcox and other female employees.

89. Mr. Lyons and Mr. Steele violated Ms. Wilcox's Fourteenth Amendment Equal Protection Clause rights by creating and permitting a work environment to exist that was discriminatory and hostile to Ms. Wilcox and by wrongfully terminating Ms. Wilcox.

90. Mr. Lyons, Mr. Steele, and others were acting outside the course and scope of their prosecutorial duties when they discriminated and retaliated against Ms. Wilcox.

91. Mr. Steele was acting within the course of his employment when he discriminated against Ms. Wilcox based on her gender and sex.

92. Ms. Wilcox engaged in the protected activity of complaining in front of Ms. Spangler, Mr. Lyons, Mr. Jones, Mr. Felts, and Mr. Steele of the discriminatory and hostile work environment towards women in the Office.

93. Mr. Lyons, as Mr. Steele's supervisor, failed to take steps to prevent a retaliatory environment, based on Ms. Wilcox's gender and sex, failed to intervene to prevent Mr.

Steele's behavior, and allowed Mr. Steele's behavior to go unchecked by failing to discipline Mr. Steele.

94. Mr. Lyons retaliated against Ms. Wilcox for reporting Mr. Steele's battery and sexually discriminatory comments, by requiring her to endure Mr. Steele's continually threatening behavior, not taking appropriate steps to mitigate the hostile environment, by taking active steps to foster a hostile environment, for the retaliatory resubmittal of Ms. Wilcox's timesheet, and her ultimate termination from employment.

95. As a direct and proximate result of Mr. Lyons' and Mr. Steele's actions, Ms. Wilcox has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

96. At all times material hereto, Mr. Lyons, acting as Commonwealth Attorney, and Mr. Steele, acting as a state employee, engaged in retaliatory practice or practices with malice or reckless indifference to the constitutionally and statutorily protected rights of Ms. Wilcox so as to support an award of liquidated and/or punitive damages.

97. Prior to Ms. Wilcox's separation of employment with Carroll County Commonwealth Attorney's Office, Ms. Wilcox was performing her work, including her attendance, at a satisfactory level and meeting or exceeding Mr. Lyons' legitimate business expectations.

98. Any reasons cited by Mr. Lyons for Ms. Wilcox's discipline and termination were pretextual as Ms. Wilcox's work performance was meeting legitimate business expectations.

99. The above-described acts by Defendants and Mr. Lyons and Mr. Steele constitute a claim for retaliation in violation of 42 U.S.C. § 1983 for infringing on Ms. Wilcox's Fourteenth Amendment Equal Protection rights.

## COUNT II: DEPRIVATION OF LIBERTY INTEREST
## IN VIOLATION OF 42 U.S.C. § 1983 AGAINST DEFENDANT LYONS

100. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

101. Ms. Wilcox has a recognized Fourteenth Amendment Due Process Clause right to not suffer a deprivation of a liberty interest, namely the loss of her good name, professional and personal reputation, honor, or integrity.

102. Mr. Lyons, at all times material hereto, was a constitutional officer of the Commonwealth of Virginia as Commonwealth Attorney, and therefore, operated under color of law.

103. Ms. Wilcox was employed by Carroll County Commonwealth Attorney's Office.

104. Mr. Lyons' stated reason for Ms. Wilcox's termination, "insubordination," was false and placed a stigma on Ms. Wilcox's good name, professional and personal reputation, honor, and integrity.

105. Mr. Lyons leveled the accusation of "insubordination" at the moment of Ms. Wilcox's termination.

106. Ms. Wilcox, at all times material hereto, was not insubordinate. Rather, Ms. Wilcox was always professional and courteous despite the sex discrimination, hostile work environment, harassment, and retaliation that she suffered.

107. Ms. Wilcox's termination was well known within the small community of Carroll County, Virginia.

108. Prospective employers have requested whether Ms. Wilcox has ever been terminated and Ms. Wilcox was required to describe the circumstances.

109. Ms. Wilcox was falsely accused of insubordination by Mr. Lyons, the Commonwealth Attorney and the alter ego of her employer, Carroll County Commonwealth Attorney's Office.

110. Ms. Wilcox was never notified of the "insubordination" charge prior to the moment of her termination and never afforded a "name-clearing" hearing to dispute this characterization.

111. The false accusation of insubordination has made it difficult, if not impossible, for Ms. Wilcox to be employed as an attorney in Carroll County, or surrounding counties.

112. Defendant Lyons perpetuated this stigmatizing occurrence by filing public documents and arguing through counsel in open court that Ms. Wilcox was unfit for her job and had engaged in misconduct and insubordination.

113. As a direct and proximate result of Mr. Lyons' actions, Ms. Wilcox has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

114. At all times material hereto, Mr. Lyons, acting as Commonwealth Attorney, engaged in a discriminatory practice or practices with malice or reckless indifference to the constitutionally and statutorily protected rights of Ms. Wilcox so as to support an award of liquidated and/or punitive damages.

115. Prior to Ms. Wilcox's separation of employment with Carroll County Commonwealth Attorney's Office, Ms. Wilcox was performing her work at a satisfactory level and meeting or exceeding Mr. Lyons' legitimate business expectations.

116. Any reasons cited by Mr. Lyons for Ms. Wilcox's discipline and termination were pretextual as Ms. Wilcox's work performance was meeting legitimate business expectations.

117. The above-described acts by Defendant Lyons constitute a claim for a deprivation of liberty interest in violation of 42 U.S.C. § 1983 for infringing on Ms. Wilcox's Fourteenth Amendment Due Process rights.

COUNT III: COMMON LAW BATTERY AGAINST DEFENDANT STEELE

118. Plaintiff incorporates by reference herein the preceding paragraphs of the Complaint.

119. Mr. Steele intentionally balled his hand into a fist and struck Ms. Wilcox.

120. Mr. Steele's actions were intentional as to inflict harm and/or cause offense to Ms. Wilcox.

121. Mr. Steele in fact struck Ms. Wilcox on her right shoulder.

122. Mr. Steele committed the Virginia common law tort of battery against Ms. Wilcox.

WHEREFORE, Plaintiff Colette Marie Wilcox prays for judgment against the Defendants Nathan H. Lyons, Esq., individually and in his official capacity as Commonwealth Attorney for Carroll County, Virginia and Phillip C. Steele, individually and in his official capacity as a Deputy Commonwealth Attorney for Carroll County, Virginia; and for equitable relief, compensatory damages, punitive damages, together with prejudgment interest from the date of termination of the Plaintiff's employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,

/s/ Thomas E. Strelka

Thomas E. Strelka (VSB No. 75488)
L. Leigh R. Strelka (VSB No. 73355)
Strelka Law Office, PC
119 Norfolk Avenue, SW
Suite 330, Warehouse Row
Roanoke, Virginia 24011
Phone: (540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com

**CERTIFICATE OF SERVICE**

      I certify that on the 5th day of April, 2018, I served the forgoing pleading via the Court's CM/ECF system, with notice of electronic filing (NEF) on the following:

Henry S. Keuling-Stout
Keuling-Stout, PC
125 Clinton Avenue East
P.O. Box 400
Big Stone Gap, VA
(276) 523-1676
keulingstout@gmail.com
*Counsel for Defendant*

                                        /s/ Thomas Strelka
                                        *Counsel for Plaintiff*