IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| COLETTE M. WILCOX, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:17-cv-000530 |
| | ) | |
| v. | ) | |
| | ) | |
| NATHAN H. LYONS, ESQ., et al., | ) | By: Michael F. Urbanski |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

This is an employment action arising under both federal and state law. Plaintiff Colette M. Wilcox ("Wilcox") filed this employment action pursuant to 42 U.S.C. § 1983, alleging violations of her due process rights under the Fourteenth Amendment to the United States Constitution. Defendants moved to dismiss Wilcox's claims. ECF No. 35. The court held a hearing on Defendants' first motion to dismiss on March 22, 2018, and subsequently entered an order dismissing with prejudice Wilcox's claims against Carroll County as well as her hostile work environment claim against defendants Nathan H. Lyons, Esq., ("Lyons"), the Commonwealth Attorney for Carroll County, and Phillip C. Steele, Esq. ("Steele"), a Deputy Commonwealth Attorney for Carroll County. ECF No. 22. The court dismissed without prejudice Wilcox's claims of sex discrimination, retaliation, and deprivation of liberty interest. ECF No. 22. The court also gave Wilcox leave to amend. Wilcox's state law battery claim against Steele survived the first motion to dismiss. ECF Nos. 32-33.

Wilcox moved for reconsideration of the court's March 23, 2018, order regarding her retaliation claim. ECF No. 24. The court entered an order denying Wilcox's motion for

1

reconsideration. ECF No. 33. Wilcox then filed an amended complaint in which she (1) asserted additional factual matter supporting her claim for deprivation of liberty interest (Count II), (2) restated her battery claim (Count III), and (3) reasserted her retaliation claim (Count I). Wilcox's amended complaint did not provide any new factual matter for the court to consider vis-à-vis the retaliation claim. Count I was therefore dismissed. Id. The only remaining claims in the amended complaint are Count II against Lyons and Count III against Steele.

The matter presently before the court is Defendants' motion to dismiss Wilcox's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 35. With respect to Count II, Defendants argue that Wilcox fails to state a claim because the facts alleged are false. Id. at 10-11. Indeed, Defendants state that the Wilcox's allegations as to Count II are "just absolutely contrary to the facts, facts indeed Ms. Wilcox and her attorney know to be false." ECF No. 35, at 11. This argument is inapposite as the facts alleged by Wilcox are taken as true at the motion to dismiss stage. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Defendants further argue that Wilcox fails to state a claim for Count II because Wilcox initiated the administrative claims process with the Virginia Employment Commission ("VEC"), ECF No. 35, at 5-6, relying on Bishop v. Wood for the proposition that publicly filed documents and statements made in a judicial proceeding commenced by the plaintiff after she suffered her alleged injury cannot retroactively support a cause of action for deprivation of liberty. 426 U.S. 341, 348 (1976). Defendants move to dismiss Count III, arguing that Steele was not acting under the color of law and state law is not to be enforced in federal court through 42 U.S.C. § 1983, and that, in any event, Wilcox

failed to adequately plead the "volitional activity" element required to state a claim for battery under Virginia law. ECF No. 35, at 11-16.

For the reasons set forth below, Wilcox has failed to allege facts sufficient to support her deprivation of liberty claim in Count II. In light of the dismissal of Wilcox's last remaining federal claim, the court declines to exercise supplemental jurisdiction over Count III, her state-law claim for battery, and dismisses that claim without prejudice. The motion to dismiss Count II and Count III is therefore **GRANTED**.

I.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for a party to move for dismissal when a complaint fails to state a claim for which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plaintiff establishes "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d at 474. However, a court does not need to accept either "legal conclusions drawn from facts" or "unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Further, "[t]hreadbare recitals of the elements of a cause of action,

3

supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Only after a claim is stated adequately may it then "be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.

## II.

The Fourteenth Amendment protects the "right to procedural due process when governmental action threatens a person's liberty interest in his reputation and choice of occupation." Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 (4th Cir. 2006). The Fourth Circuit has determined that to state a claim for deprivation of a liberty interest in one's reputation or choice of occupation pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that the charges made against her imposed on her a stigma that prevented her from engaging in other employment, (2) that the charges were made public by her employer, (3) that the charges were made in conjunction with a termination or significant demotion, and (4) that the charges were false. Stone v. University of Md. Med. Sys. Corp., 855 F.2d 167, 173 n. 5 (4th Cir. 1988) (citing Board of Regents of State Colls. V. Roth, 408 U.S. 564, 573–75 (1972); see Bishop v. Wood, 426 U.S. 341, 348–49 (1976).[1]

## A.

---

[1] Wilcox has no cognizable property interest in her position at the Carroll County Commonwealth Attorney's Office because she was an at-will employee. However, a public employer cannot deprive an employee of her "freedom to take advantage of other employment opportunities." Sciolino v. City of Newport News, 480 F.3d 642, 646 (4th Cir. 2007). Wilcox's claim thus arises from the combination of two distinct rights protected by the Fourteenth Amendment: (1) the liberty "'to engage in any of the common occupations of life,'" Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 572 (1972) (quoting Meyer v. Nebraska, 262 U.S. 390, 399 (1923)); and (2) the right to due process "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971); see also Paul v. Davis, 424 U.S. 693, 701 (1976) (explaining that an individual's liberty interest in his reputation is only sufficient "to invoke the procedural protection of the Due Process Clause" if combined with "some more tangible interest[] such as employment")." Id. To state a claim for this type of liberty interest then, the plaintiff must prove the four elements laid out in Sciolino v. City of Newport News. Va., 480 F.3d 642, 646 (4th Cir. 2007).

With respect to the first element, Wilcox alleges that her wrongful termination resulted in a stigmatized and severely diminished professional reputation within Carroll County and throughout Southwest Virginia. See Compl., ECF No. 34, at ¶¶ 74-81, 111-12. Wilcox claims that Lyons perpetuated this stigma related to her work performance by petitioning the Circuit Court of Carroll County to overturn an award of unemployment benefits awarded to Wilcox from the VEC. In furtherance of this petition, Wilcox alleges that Lyons filed damaging pleadings and made damaging statements through counsel in open court during oral argument on March 29, 2017, before Circuit Court Judge David A. Melesco. Id. at ¶¶ 75-81, 112. More specifically, Wilcox claims the aforementioned documents and statements suggest that Wilcox: (1) engaged in misconduct at her place of employment as defined by Virginia Code § 60.2-618, (2) engaged in willful insubordination and that said her insubordination was to such a high degree, that a single incident justified her termination, (3) failed to follow an attendance policy, and (4) acted unreasonably regarding her duties as a prosecutor. Id.

With respect to the second and third elements, Wilcox claims that Lyons made statements "through counsel" in open court petitioning the Circuit Court of Carroll County to overturn an award of unemployment benefits Wilcox received because of her termination. Id. at ¶ 76. Wilcox notes that Lyons' petition involved lengthy briefings by parties, oral arguments, and public filings directly related to her termination, and that the "stigmatizing pleadings remain at the Clerk's Office of Carroll County for public inspective by anyone." Id. at ¶¶ 76-78. Wilcox avers that the statements uttered by counsel for Lyons were made in a forum frequented by Wilcox's peers and prospective employers and that the Virginia

Supreme Court's online case information website indicates the names of parties involved and the existence of pleadings. Id. at ¶¶ 80-81. Wilcox further alleges that her termination was well known within the small community of Carroll County and that prospective employers have requested whether she has been terminated, requiring her to describe the circumstances. Id. at ¶¶ 107-8. Finally, she alleges that this stigma resulted directly from statements made after and in conjunction with her termination. Id. at ¶¶ 75-81, 112

With respect to the fourth and final element, Wilcox alleges the falsity of the statements made in connection with her termination. Id. at ¶¶ 72, 75, 105-06, 109. Wilcox claims that Lyons' accusation of insubordination was pre-textual, that she only exhibited excellent work performance throughout her employment, and that she was always professional and courteous despite the allegedly hostile work environment, harassment, and sexual discrimination she endured. Id. at ¶¶ 72, 98, 116. Wilcox claims that she remained "professional and cordial" both when Lyons (1) accused her of violating state policy by taking too much leave and when he subsequently (2) requested that she sign a written reprimand documenting this violation. Id. at ¶¶ 61-67. When she sought clarification by requesting a copy of the relevant policy to which Lyons had referred, Wilcox claims that Lyons suddenly turned his back, raised his voice, and terminated her for "insubordination." Id. at ¶¶ 66-68. Wilcox claims to have been performing her work satisfactorily at the time of her termination by meeting or exceeding Lyons' legitimate business expectations. Id. at ¶¶ 97, 115-16. Finally, Wilcox contends that the false accusations leveled by Lyons "have made it difficult, if not impossible" to gain employment in Carroll County or in surrounding counties. Id. at ¶ 11.

**B.**

For reasons set forth below, the court finds that Wilcox has not adequately pled the first element, i.e., whether her termination imposed on her a stigma precluding her from engaging in other work. The court withholds judgments as to the remaining elements. In order to implicate a protected liberty interest, the stigma Wilcox alleges attached to her professional reputation "must at least 'imply the existence of serious character defects such as dishonesty or immorality,' 'that might seriously damage [her] standing and associations in [her] community' or 'foreclose[ ] [her] freedom to take advantage of other employment opportunities.'" Zepp v. Rehrmann, 79 F.3d 381, 387 (4th Cir. 1996) (quoting Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982) and Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972)). In assessing liberty interest claims, the Fourth Circuit has distinguished between statements that imply such serious character defects from those that merely imply "incompetence," the former being actionable, the latter not. Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 308 (4th Cir. 2006); compare Boston v. Webb, 783 F.2d 1163, 1165–66 (4th Cir. 1986) (recognizing that plaintiff's liberty interest "was surely implicated" by public announcement that he was discharged after failing to disprove allegation of receiving bribe), Cox v. N. Va. Transp. Comm'n, 551 F.2d 555, 557–58 (4th Cir. 1976) (affirming trial court's determination that plaintiff's liberty interest was infringed when employer publicly linked her discharge to investigation of financial irregularities, thus "insinuating dishonesty"), and McNeill v. Butz, 480 F.2d 314, 319–20 (4th Cir. 1973) (concluding that federal employees' liberty interests were implicated by government-employer's charges of Agriculture Department regulation violations that "smack of

7

deliberate fraud" and "in effect allege dishonesty"), with Zepp v. Rehrmann, 79 F.3d 381, 388 (4th Cir. 1996) (rejecting deprivation of liberty interest claim where employer announced that plaintiff was being forced to retire "due to management problems"—an accusation, at most, "of incompetence or unsatisfactory job performance"), and Robertson, 679 F.2d at 1091–92 (concluding that liberty interest was not implicated by nonrenewal of employment contract for "incompetence and outside activities," because such allegations did not involve attack on plaintiff's integrity or honor).

Here, Wilcox alleges that Lyons made public the following false, stigmatizing charges: (1) Wilcox engaged in misconduct at her place of employment as defined by Virginia Code § 60.2-618, (2) Wilcox engaged in willful insubordination and that said her insubordination was to such a high degree, that a single incident justified her termination, (3) Wilcox failed to follow an attendance policy, and (4) Wilcox acted unreasonably regarding her duties as a prosecutor. Id. at ¶¶ 78, 105, 109. The court finds that such charges, while unfavorable to Wilcox, amount to no more than that which the Fourth Circuit and many other courts have deemed insufficient to imply "serious character defects" and have held are not of a sufficient magnitude to rise to the level of liberty deprivation. The charge of "insubordination," for example, is not sufficiently stigmatizing to establish a deprivation of liberty. See Ridpath, 447 F.3d at 308–09; Dunn v. Town of Emerald Isle, 1990 WL 180977, at *4 (4th Cir. Nov. 26, 1990) (holding that claims that plaintiff failed to perform required duties, demonstrated a lack of cooperation and discourteous treatment towards others, and displayed an insubordinate attitude do not allege serious character defects and therefore as insufficient to state a claim as a matter of law). In Harmon v. Cumberland County Board of Education, for

8

example, the plaintiff, a middle school special education teacher, argued that a decision not to renew her employment, based on "fabricated complaints regarding her character and job performance," "blemish[ed] her reputation and foreclosed her current ability to find work as a teacher." 186 F. Supp. 3d 500, 508 (E.D.N.C.), aff'd, 669 F. App'x 174 (4th Cir. 2016). The allegedly fabricated complaints were memorialized in a letter recommending non-renewal, and included allegations of the plaintiff's "inability to maintain effective classroom management of students" and "personal behavior that was insubordinate and contemptuous." Id. at 504. The Harmon court concluded that these garden-variety charges of "unsatisfactory job performance" and "insubordination" do not imply "serious character defects." Id. at 508.

Furthermore, in Stickley v. Sutherly, the plaintiff brought a § 1983 deprivation of liberty action alleging that his reputation was tarnished and his ability to seek employment was impaired following his termination from the Strasburg Police Department. 2009 WL 1806657, at *6 (W.D. Va. June 24, 2009). The plaintiff was terminated "for taking an 'action which [would] impair the efficiency or reputation of the department, its members, or employees' and '[i]nsubordination or serious breach of discipline.'" Id. at *6. The Stickley court held that these "charges related to Stickley's job performance . . . [and] do not implicate a liberty interest because on their own they do not imply that Stickley has a serious character defect like dishonesty or immorality." Id. The claim that Wilcox "acted unreasonably regarding her job duties as a prosecutor" is similarly insufficient to implicate the Fourteenth Amendment. See, e.g., Ludwig v. Bd. of Trustees of Ferris State Univ., 123 F.3d 404, 410 (6th Cir. 1997) (holding employee not deprived of a liberty interest when

9

employer stated only that the employee was terminated because of "improper or inadequate performance, incompetence, neglect of duty . . . ."); Gregory v. Hunt, 24 F.3d 781, 783 (6th Cir. 1994) (finding no deprivation of liberty where employee terminated for "inadequate work performance . . . fail[ure] to follow clear instructions . . . [and] for violating departmental policies and procedures"); Etter v. Spencer, 548 F. Supp. 2d 248, 250 (W.D. Va. 2008) (holding that "[a]llegations of incompetence or unsatisfactory job performance are not sufficiently stigmatizing to establish a deprivation of a liberty interest" and "[m]ismanagement of funds is likewise not a serious character defect whose publication would seriously damage an employee's reputation" (citing Russillo v. Scarborough, 935 F.2d 1167, 1172 (10th Cir. 1991)); Gaskin v. Vill. of Pachuta, 484 F. Supp. 2d 551, 556 (S.D. Miss. 2007) (holding that statements that an employee has been "terminated for his or her inadequate job performance, suggest a mere 'situational difficulty rather than a badge of infamy, public scorn, or the like, and hence do not give rise to a liberty interest (citations and quotations omitted)).

The court finds that the charges leveled against Wilcox and allegedly disclosed by Lyons, because they are closely analogous to those in Harmon, Stickley, Robertson, and Zepp, and a far cry from those in Ripath, Webb, and Cox, do not present a cognizable claim for relief.[2] Indeed, those charges Wilcox alleges Lyons "made public" relate to insubordination, attendance, and incompetence, all of which, as in Stickley, in turn relate

---

[2] Wilcox alleges that one of the stigmatizing charges leveled against her in connection with the Carroll County Circuit Court proceeding was "misconduct at her place of employment as defined by Virginia Code § 60.2-618." While this statute covers an array of misconduct, Wilcox herself indicates that "misconduct" specifically referred to non-actionable charges of absenteeism and/or insubordination. Wilcox has not pled facts sufficient to support any other implication. Indeed, according to the amended complaint, the incident that gave rise to the charge of insubordination related exclusively to Lyons' reprimand of Wilcox for an alleged violation of a policy regarding leave accrual. ECF No. 34, at 7-10; see also ECF No. 37, at 2-3. If there is reason to believe that that the charge of "misconduct" connoted anything other than those facts which Wilcox herself has specifically pled, she has failed to plead as much.

10

primarily to her "job performance," and therefore do not, as a matter of law, rise to the level of liberty deprivation. Indeed, the charges against Wilcox do not, as in Ripath, Webb, or Cox, insinuate specific charges of moral turpitude, criminal activity, or serious character defects such as dishonesty or immorality, nor does Wilcox "allege[] these charges carry such a connotation." Stickley, 2009 WL 1806657, at *6. Id. Though Wilcox's termination "might make [her] somewhat less attractive to some other employers[,]" the mere fact that she was discharged "would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty'" under the Fourteenth Amendment. Roth, 408 U.S. at 574 n. 13. In sum, Wilcox has not adequately pled a crucial element required to state a claim for deprivation of liberty pursuant to 42 U.S.C. § 1983, and accordingly, the motion to dismiss Count II is **GRANTED**.[3]

## III.

Wilcox's remaining claim, Count III, is in federal court only under the doctrine of pendent jurisdiction and hence is properly dismissed on jurisdictional grounds at this early pretrial stage of the proceedings. 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726

---

[3] In Bishop v. Wood, the Supreme Court reminded lower courts:
> "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions."

426 U.S. 341, 349–50 (U.S. 1976).

(1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995).

IV.

For the foregoing reasons, the court **DISMISSES with prejudice** Defendants' motion to dismiss Count II and **DISMISSES without prejudice** Count III of Wilcox's First Amended Complaint.

An appropriate order will be entered.

Entered: 12-06-2018

Michael F. Urbanski
Chief United States District Judge