Wilcox v. Lyons, et al., 7:17cv530, 3/22/18


1                   UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF VIRGINIA
2                         ROANOKE DIVISION

3      **************************************************************

4      COLETTE MARIE WILCOX,      CIVIL CASE NO.: 7:17CV530
                                  March 22, 2018 - 3:10 p.m.
5                                 Roanoke, Virginia
              Plaintiff,          Motions Hearing
6      vs.

7      NATHAN H. LYONS, ESQ.,     Before:
       PHILLIP C. STEELE, ESQ.,   HONORABLE MICHAEL F. URBANSKI
8      CARROLL COUNTY, VIRGINIA,  CHIEF UNITED STATES DISTRICT JUDGE
                                  WESTERN DISTRICT OF VIRGINIA
9              Defendants.

10     **************************************************************

11     APPEARANCES:

12     For the Plaintiff:     THOMAS EUGENE STRELKA, ESQUIRE`
                              NORVELL WINSTON WEST, IV, ESQUIRE
13                            Strelka Law Office
                              119 Norfolk Avenue, S.W., Ste. 330
14                            Roanoke, VA 24011
                              540-283-0802
15                            Thomas@strelkalaw.com
                              Winston@strelkalaw.com
16

17     For the Defendants
       Lyons and Steele:      HENRY S. KEULING-STOUT, ESQUIRE
18                            Keuling-Stout, P.C.
                              P.O. Box 400
19                            Big Stone Gap, VA 24219
                              276-523-1676
20                            keulingstout@gmail.com

21

22
       Court Reporter:  JoRita B. Meyer, RPR, RMR, CRR, FOCR
23                      210 Franklin Road, S.W., Room 540
                        Roanoke, Virginia  24011
24                      540.857.5100, Ext. 5311
               PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
25     TRANSCRIPT PRODUCED BY COMPUTER.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   APPEARANCES CONTINUED:

2   For the Defendant
    Carroll County, VA:    JENNIFER DILLOW ROYER, ESQUIRE
3                          Royer Law Firm, P.C.
                           1901 Denniston Ave., SW
4                          Roanoke, VA 24015
                           540-788-2982
5                          Jroyer@royerlawfirm.com

6   ///

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   (Proceedings commenced, 3:10 p.m.)

2           THE COURT:  Good afternoon.  Please call the case.

3           THE CLERK:  *Colette Marie Wilcox versus Nathan H.*

4   *Lyons, Esquire, and others*, Civil Action Number

5   7:17-CV-00530.

6           THE COURT:  Okay.  Good afternoon, counsel.

7           The Court has read all that you have filed on the

8   subject of this lawsuit, all the briefs, the cases.  I'm up

9   to speed on the legal arguments that have been made.

10          So let's see.  I want to hear argument first from

11  Carroll County.  Ms. Royer, let's hear from you.

12          MS. ROYER:  Before I begin, I apologize.  I'm

13  fighting some sickness and I might cough at you a little bit.

14  I apologize.

15          So, Your Honor, at the end of the day this is an

16  employment --

17          THE COURT:  Well, I know you won't be coughing at

18  me; you'll just be coughing.

19          MS. ROYER:  In your general direction.

20          THE COURT:  Right.  I'm sorry for that too.  There's

21  a bunch of stuff going around.

22          MS. ROYER:  Your Honor, the overarching theme of our

23  argument is that Carroll County was not Ms. Wilcox's employer

24  and is, therefore, not liable for any employment

25  discrimination claim she may have.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1        As the Court knows, having read the pleadings in the

2   case and everything we've cited, Mr. Lyons is a

3   constitutional officer.  Ms. Wilcox acknowledges in her

4   pleadings that she was employed by Mr. Lyons as a

5   constitutional officer.

6        And as the Court is also well aware, it's

7   well-established in Virginia law that constitutional officers

8   are neither agents of nor subordinates of the local

9   government and that the local government has no control over

10  their work performance.

11       THE COURT:  He claims that the *Butler* joint employer

12  doctrine applies based on an allegation, I think, in

13  paragraph 95, I think it was, unless I got it wrong.  Let me

14  look.  No, that's a different -- that's a different point.

15       It's paragraph -- excuse me.  I just got the number

16  wrong.  Paragraph 85, "Upon information and belief, at all

17  times material hereto, Carroll County provided funding to the

18  Carroll County Commonwealth's Attorney's Office to monetarily

19  support Ms. Wilcox's position as Deputy Commonwealth

20  Attorney."

21       Is that sufficient -- are sufficient facts pled in

22  this complaint to meet the *Butler* test?

23       MS. ROYER:  No, Your Honor.  And as the Court is

24  well aware of the *Butler* factors, one of the overarching

25  things that must be proven is that the putative employer

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   exercises control over the putative employee.

2          THE COURT:  Isn't that inconsistent with the

3   allegations in this case?  Because the allegations in this

4   case are that the Commonwealth's Attorney stood up, turned

5   his back on the plaintiff, and said, "You're fired for

6   insubordination," without any control, involvement, exercise,

7   anything, by Carroll County.  He just did it.

8          MS. ROYER:  That's exactly right.

9          THE COURT:  Doesn't that fly sort of in the face of

10  the first two *Butler* factors, the first one being the right

11  to hire and fire, and the second one being the right to, I

12  believe, day-to-day supervision of the individual, including

13  employee discipline?  There's no allegation of that.

14          MS. ROYER:  There is none.

15          THE COURT:  Why is this case any different from

16  Judge Dillon's case in 2016 in the *Leuenberger versus Spicer*,

17  where there was an allegation against the Commonwealth

18  Attorney in Frederick County, and the allegation was that

19  Frederick County employed this particular Assistant

20  Commonwealth's Attorney, and the allegations there were just

21  like here, that -- that there was -- that there was some --

22  some involvement of salary supplement and some involvement of

23  space, and nothing more?  You know, the county space and the

24  county provided a salary supplement.  Nothing about

25  supervising, giving assignments, hiring, firing, all the

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1  other things that are telltale of an employer-employee

2  relationship.  I mean, isn't *Leuenberger* squarely on point?

3  Shouldn't the Court follow it?

4          MS. ROYER:  Yes, Your Honor.  The --

5          THE COURT:  If I do that, doesn't that simply

6  eliminate Carroll County entirely?

7          MS. ROYER:  Yes, Your Honor.

8          THE COURT:  All right.  Let's hear from Mr.

9  Keuling-Stout on behalf of the Assistant Commonwealth

10  Attorney and the Commonwealth Attorney.

11          Thank you, Ms. Royer.  I thought your brief was well

12  done, by the way.  Thank you.

13          MR. KEULING-STOUT:  Good afternoon, Your Honor.

14          THE COURT:  Good morning, and welcome to the

15  northeast.

16          MR. KEULING-STOUT:  Thank you very much.  Thank you

17  very much.  And the snow is just enough that there was no

18  problem getting from Big Stone Gap to here.

19          THE COURT:  Well, that's good.

20          MR. KEULING-STOUT:  It looked beautiful on the

21  mountaintop.

22          In preparing for this, I noted several items that I

23  thought would be of assistance -- that could be of assistance

24  to the Court.  I noticed -- and what I'm basing it on is the

25  complaint itself, and there's 155 of these items, and number

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   14 states that, among other things, Ms. Wilcox around the

2   morning of 30 November --

3           THE COURT:  I'm sorry, you're on 13?

4           MR. KEULING-STOUT:  I'm on 14.

5           THE COURT:  14.  I'm sorry.  Let me pull that up.

6           Thank you.  Go ahead.  I got it.

7           MR. KEULING-STOUT:  Okay.  Good.

8           And the important thing is where she said that she

9   was standing.  She was standing in the office of Victim

10  Witness Director Teddy Felts.  The office, in other words,

11  where this occurred was not in the Commonwealth Attorney's

12  office, it was in the Office of Victim Witness -- that is, he

13  has -- I think he's a -- the Victim Witness Program, he's the

14  director of it; Teddy is.

15          So what I wanted to say was where this is to have

16  happened happened in the Office of Victim Witness, it was not

17  the office of any of the Commonwealth Attorneys or Assistant

18  Commonwealth Attorneys.  It was close-by, yes.

19          THE COURT:  Was the Victim Witness Director's Office

20  in the same sort of suite of offices --

21          MR. KEULING-STOUT:  Yes.

22          THE COURT:  -- as the Commonwealth's Attorney?

23          MR. KEULING-STOUT:  Yes.

24          THE COURT:  Okay.  So why does that matter?

25          MR. KEULING-STOUT:  It matters because what is going

8

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   on -- because the next step has nothing to do with it.

2          THE COURT:  Okay.  Go ahead.

3          MR. KEULING-STOUT:  The next step is I noticed that

4   there was a -- there was a case that had been ruled on on

5   January 24, 2018, called *Nexus Services v. Vance*, and that

6   kind of speaks for the whole thing, that what was happening

7   here --

8          THE COURT:  Was that my case?

9          MR. KEULING-STOUT:  It is.

10          THE COURT:  Yeah, I seem to recall it.

11          MR. KEULING-STOUT:  It is.  And then the interesting

12   thing, the very important thing about it is if you look at --

13          THE COURT:  That's the one where the person who was

14   employed as a deputy sheriff in Augusta County went onto some

15   property, right?

16          MR. KEULING-STOUT:  Right.  It had nothing to do

17   with being a police officer whatsoever.

18          THE COURT:  Right.  That's what I found.  Of course,

19   they've appealed that, but, you know, it is what it is.

20          MR. KEULING-STOUT:  Well, yeah.

21          Now, if you look at the paragraph number 83 -- up

22   until then, you had paragraph 83, 101, 119, 125, and 134.

23   The one to look at is 125.  125 states -- let me get 125

24   here.  Yeah, each of them -- they were attempting to -- what

25   the word is, is Steele, Phillip Steele, is a state employee,

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    so he has color of law.

2         Well, number 25 [sic] says, "Because the actions of

3    Mr. Steele were within the scope of his employment as a state

4    employee, but not within the scope of his prosecutorial

5    duties...."

6         Now, he has put himself even more into the decision

7    that was made by you that all that was happening in here,

8    what was happening in here had nothing to do with what his

9    job was, nothing whatsoever.  What they were talking about

10   was, in fact --

11        THE COURT:  Problems with families over

12   Thanksgiving.

13        MR. KEULING-STOUT:  That's right.

14        THE COURT:  That's what the discussion was --

15        MR. KEULING-STOUT:  Yes.

16        THE COURT:  -- that led to this alleged push or

17   punch, or whatever it was.

18        MR. KEULING-STOUT:  Yes.

19        THE COURT:  Right.

20        MR. KEULING-STOUT:  And so what I'm saying is is

21   that it is covered perfectly or very accurately with the case

22   of *Nexus versus* -- let's see, *Nexus Services v. Vance*.

23        THE COURT:  But isn't that case distinguishable

24   because, one, this is happening within -- within the county

25   offices, whether it's -- not county, but within the

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    Commonwealth Attorney's Office, and these folks were all

2    working at this time, whereas Ms. Vance was off duty, after

3    hours, and just happened to have her Augusta County sheriff's

4    polo shirt on when she drove onto the Nexus Services

5    property?  So can't you argue that case is distinguishable?

6            MR. KEULING-STOUT:  No, because --

7            THE COURT:  Why not?

8            MR. KEULING-STOUT:  The important part of it is is

9    what you were talking about had nothing to do with the

10   Commonwealth Attorney or Assistant Commonwealth Attorney, or

11   anything the Commonwealth Attorneys would be doing, nothing.

12   They're talking about family and notions of that nature.

13           THE COURT:  Okay.  I got your argument.

14           MR. KEULING-STOUT:  All right.

15           THE COURT:  Hadn't thought of that one, but I got

16   your argument.

17           MR. KEULING-STOUT:  All right.

18           One thing that I noticed -- and this is in number

19   20 [sic] -- when I pulled up something was, she indicates

20   that she was mistreated, says -- let's see, stand up for

21   female relatives.  But there was no mention of females in the

22   office.  In other words, part of what she would be required

23   to say is, Look, this Commonwealth Attorney's office is

24   horrible and all the women are having a problem.  There's no

25   indication that they are.  The only females and women that

11

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1  were discussed were family, and it really wasn't -- it wasn't

2  talking about Ms. Wilcox's family, it was talking about the

3  family of Teddy Felts, who does not work for the Commonwealth

4  Attorney.

5       I also felt that it's important for me to make sure

6  that we -- it's significant to me.  In number 36, we have the

7  Commonwealth's Attorney -- the Commonwealth's Attorney,

8  Lyons -- he meets with Ms. Wilcox and asks Ms. Wilcox how to

9  resolve the situation.

10       Number 37, she said, I'm really not sure.

11       Number 38, Attorney Lyons then asks if Mr. Steele,

12  Phillip, could come into the room.  No.

13       At that point, Lyons, the Commonwealth's Attorney,

14  apologizes for the hostility, the situation.

15       Number 40, Assistant Commonwealth Attorney Steele

16  asks Ms. Wilcox if they could speak.  No.

17       Number 48, Ms. Wilcox informs Steele, quote, "that

18  she wished to leave the incident in the past," end quote.

19       So they were determining -- talking to each other,

20  and the person who is filing the suit has said that she

21  wished to leave the incident in the past.

22       There's nothing about -- there's nothing that

23  happened before or after.  And when you look -- and I keep

24  harping on this, but I harp in a sort of important way.  It

25  is the statement that she made -- the e-mail that she wrote

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    to Commonwealth Attorney Lyons, and she mentions it in

2    document -- in paragraph 35, so she admits it -- I mean, she

3    talks about it, number 35.  She -- let me get to 35.  At

4    approximately 4:30 p.m. on the 30th of November, sent an

5    e-mail to Mr. Lyons.

6              This is it, that we've been looking at.  And in it,

7    importantly, it says, "I asked what that was for and said not

8    to use me as demonstrative evidence.  I'm very disturbed and

9    upset by the incident.  I had just spoke with Phillip just

10   minutes before a case.  He was cordial and even chatted about

11   Thanksgiving."

12             Now, that's the long and the short of it.  The

13   incident happened in somebody else's office in the morning,

14   whatever the time was, talking about family problems, nothing

15   to do with any of their jobs, and nothing happened before

16   referencing Phillip and Ms. Wilcox, nor after.

17             So when you're talking about a case of this nature,

18   you have to have something that's serious, something that she

19   was thrown off or she was told, you know, just horrible

20   things.

21             Here, I mean, I take my hat off to her.  She said,

22   "I just spoke to Phillip just minutes before a case.  He was

23   cordial and even chatted about Thanksgiving."  And he did

24   come -- he came to see if they could talk.  And the

25   Commonwealth Attorney, the senior, asked the same thing.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1        And so it sounded like to me there was something

2    that didn't work right, that there was some type of a joust

3    or something; and then they were talking about, let's take

4    care of it.  And I just don't see that as being something

5    that fits into the law that's attempting to be sought out

6    today.

7        THE COURT:  What about paragraph 43?

8        MR. KEULING-STOUT:  "As December of 2015 wore on,

9    Ms. Wilcox's coworkers, such as Mr. Felts and Mr. Jones,

10   distanced themselves from Ms. Wilcox."

11       That's a statement.

12       THE COURT:  In paragraph 44, she claims, Ms. Wilcox

13   claims ostracism by the other -- by the other office workers.

14       So the question is:  Is this one episode that

15   happens in Mr. Felts' office, combined with some distance and

16   ostracism, sufficient under the law to give rise to a

17   sufficiently severe and pervasive hostile work environment?

18   That's the question.

19       MR. KEULING-STOUT:  The answer is no, because all

20   that is said is such as -- let's see, as December wore on,

21   coworkers distanced themselves.

22       How?  There's no indication of what she's talking

23   about.

24       "On or about December 16th, Ms. Wilcox attempted to

25   improve the work environment that had seemingly ostracized

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1  her for complaining about being physically assaulted," so on

2  and so forth, "gathered her courage," but what are the

3  examples of what she's talking about?  She's talking about on

4  a level up here.  But what are the facts?  It's just like,

5  well, he bothered me, and I thought this.  What's the

6  evidence right here?

7          THE COURT:  Well, but, you know, all your evidence

8  in the case --

9          MR. KEULING-STOUT:  I understand.

10         THE COURT:  -- is this sufficient, in other words,

11 to put you on notice?  And if it's not sufficient to put you

12 on notice, should the plaintiff be given an opportunity to

13 amend these pleadings to establish a hostile work environment

14 claim?

15         MR. KEULING-STOUT:  Well, if it would be the case

16 that the Court would -- would -- from what 30, 43, and 44

17 state, I don't think it's sufficient.

18         What the Court I understand is saying is, it might

19 say, okay, then Ms. Wilcox, you have the opportunity to

20 change that.  And, of course, I cannot say no to that, but I

21 can certainly say that I don't think it -- 43 and 44, it does

22 not meet the requirements needed for 43 and 44, for what's

23 being alleged.

24         And then I think I said all I need to say about the

25 Commonwealth Attorney and the absolute immunity.  And I don't

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   have anything in addition to say.  I just think it's

2   extremely -- I can say a little something.  My thought is you

3   have a person who has agreed to all of these different

4   things, and the concern of the senior -- the Commonwealth's

5   Attorney, the Commonwealth's Attorney, was that, okay, she

6   isn't coming -- she called up and said, Oh, I can't be there,

7   and so people in the office -- there's only, I think, one,

8   two, three, four -- there's only four, and so she's not --

9   she's in the case -- or the -- not circuit court, but she's

10  in the court where they work for the children and all of that

11  thing.  And so when you go, when one of the people go to take

12  -- "Oh, then I'll go there," there's just not one case that

13  day.  There might be five, ten, 15 cases that day.  So she

14  just said, "Oh, I'm not going, I'll see you tomorrow," or "I

15  won't see you tomorrow."

16          And then, yeah, the administration, that's what the

17  new case did, is to show the necessity for -- that putting in

18  administration as something that for the -- for absolute to

19  prevail can be done at the administerial [sic],

20  administration, whatever, that level.

21          Up until this time it was, okay, if the

22  Commonwealth's Attorney made a big mistake, and all that

23  nature, in the courthouse, in the courtroom, then whatever

24  happened, basically, you just had absolute, it was absolute.

25          THE COURT:  What you're saying is that under the *Van*

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   *de Kamp* case, that because the issues that the Commonwealth's

2   Attorney was having with Ms. Wilcox related to her not

3   showing up for court to handle the docket for the

4   Commonwealth's Attorney, that that relates to -- that is an

5   administrative obligation that relates -- that falls under

6   the rubric of the -- the -- the Commonwealth's Attorney's

7   role as prosecutor and, therefore, there is absolute immunity

8   there.

9       MR. KEULING-STOUT:  Absolutely.  And it had been

10  thought of since 1996 when Judge Powell, in a case here from

11  our state, he's urging that it needs to be done, but as he

12  said, we can't do that in this case because we're not talking

13  about the administration.

14      But then the next case, as I've said, the most

15  recent one, which is the -- I have it here somewhere.  But

16  the most recent one, the one that said yes to the

17  administration, they now said, okay, we can now do it.  But

18  it keeps going back to the first of the cases upon which it

19  relies, which is the case of -- which is the *Van de Kamp*

20  case.  And the earlier case was the *Imbler*, I-M-B-L-E-R,

21  case.

22      THE COURT:  *Imbler*, right.

23      MR. KEULING-STOUT:  *Imbler*.

24      One more thing.  I did find -- I was somewhat not

25  convinced one way or the other, but I do have -- did find --

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   the issue was there's been no -- there's been no description

2   in this case or no statement in this case by the complainant

3   that the EEOC had been taken care of that they'd gone to see

4   them.  It's not there at all.

5        Well, the case of G-E -- strike that.

6   G-U-E-S-S-O-U-S v. Fairview, F-A-I-R-V-I-E-W, Fourth Circuit,

7   828 F.3d 208, says that it is -- the EEOC does have to be

8   required before you can pursue as the plaintiff is attempting

9   to do.

10        THE COURT:  Even in a 1983 case?

11        MR. KEULING-STOUT:  From my understanding, yes.

12        THE COURT:  Because, I mean, this isn't a Title VII

13   case.  This is a 1983 case.  He doesn't bring Title VII for

14   any number of reasons.  One, probably because of the issue

15   with not -- not more than 15 employees, and then the other

16   one with the concern that it doesn't look like there was a

17   charge of discrimination brought with EEOC in this case.  It

18   doesn't appear.  It's not alleged, anyway.  I don't know

19   whether it was or whether it wasn't.  Okay.

20        MR. KEULING-STOUT:  I know the answer to that, but

21   it has not been presented, and my understanding is -- let's

22   see.  To assist, it would be on page 221 of that statement I

23   just mentioned.

24        THE COURT:  201?

25        MR. KEULING-STOUT:  I'm sorry.  221.  221.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1       THE COURT:  Oh, in that case that you just --

2       MR. KEULING-STOUT:  Yes, in the --

3       THE COURT:  *Fairview* case?

4       MR. KEULING-STOUT:  Yes.

5       THE COURT:  *Fairview* is easier to say.

6       MR. KEULING-STOUT:  Absolutely.  Thank you very

7   much.

8       It says, "The District Court granted Fairview's

9   motion for summary judgment on Count Five, finding the

10  Geussous's Title VII hostile work environment claim was

11  time-barred.  To pursue a claim under Title VII, a Title VII

12  charge must be filed with the EEOC within the statutory

13  defined period of time of either 180 or 300."

14      My understanding of that is, yes, it's required.

15      THE COURT:  Okay.  Anything else you want to argue,

16  Mr. Keuling-Stout?

17      MR. KEULING-STOUT:  No.

18      THE COURT:  Thank you.  Let's hear from the

19  plaintiff.

20      Good afternoon, Mr. Strelka.

21      MR. STRELKA:  Good afternoon, Your Honor.  May it

22  please the Court.  I am Tommy Strelka, here today on behalf

23  of Ms. Wilcox.

24      There's a number of issues before the Court.

25  Usually, Your Honor, you are always extremely well read up on

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1  the briefs.

2          THE COURT:  I read them all.

3          MR. STRELKA:  I know you did.  So I can either begin

4  my argument or I can address questions that you have based on

5  anything.

6          THE COURT:  Let's talk about the county's argument

7  first.

8          MR. STRELKA:  Yeah, okay.  I don't want to waste the

9  county's time.  I don't want to waste the Court's time.  I

10  don't want to waste anybody's time.  In the other case that

11  you mentioned with counsel's lawyer regarding --

12          THE COURT:  Judge Dillon's case.

13          MR. STRELKA:  Judge Dillon's case, yes.

14          All I can say is there's a lacuna of knowledge about

15  what $600,000 is doing going from the county to this

16  Commonwealth Attorney.  I can speculate under the *Butler* test

17  as to a number of factors that could be checked off.  Under

18  that, I have no clue what that amount is being spent on.  I

19  have asked counsel for the county for information regarding

20  that, any information regarding that, prior to this hearing,

21  with the indication that it doesn't show much at all, we

22  dismiss this.

23          You know, I don't -- I'm not trying to get -- I'm

24  not trying to shoehorn defendants in a case they don't

25  deserve, but I've also got duties as an advocate for my

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   client.  And I read *Butler*, and I'm looking at a budget with

2   600,000 --

3        THE COURT:  You know, the Virginia Code says, look,

4   the county has got to provide space, and then they have the

5   compensation board that provides some salaries.

6        MR. STRELKA:  Sure.

7        THE COURT:  And isn't that just exactly what Judge

8   Dillon dealt with in the *Leuenberger* case?  I mean, there is

9   no allegation that anyone in the county had any control over

10  the hiring and firing or the supervision of Ms. Wilcox.  You

11  agree with me that there's no allegation as to that?

12       MR. STRELKA:  I agree.

13       THE COURT:  Okay.  And your allegation is that, in

14  fact, Mr. Lyons stood up, turned around, and said, "You're

15  fired for insubordination."

16       MR. STRELKA:  Absolutely.

17       THE COURT:  Okay.  All right.

18       MR. STRELKA:  And I just want to add, you know, if I

19  had -- in the other case with Judge Dillon, they knew exactly

20  what money was being spent on.

21       THE COURT:  It was a 12(b)(6), just like this one.

22       MR. STRELKA:  Right, but they knew more information

23  coming into court than I know right now.

24       THE COURT:  They also alleged joint employment in

25  that case.  You haven't even alleged that.  We're just

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    straining to infer it.

2              MR. STRELKA:  I'm operating on the best good faith

3    basis I can, and all I can tell you is that I have no clue

4    what the delineation of those funds is.  I don't know if it

5    is as limited as Judge Dillon's case.

6              THE COURT:  The Fourth Circuit said, like, the first

7    few factors are the most important.

8              MR. STRELKA:  Sure.

9              THE COURT:  And you don't get any of those.

10             MR. STRELKA:  Right.  I completely understand your

11   concerns, the county's concerns.  It's all well-meant.  It's

12   a unique situation.  As an advocate, I do what I do.

13             I would ask the Court to perhaps open up very

14   limited discovery on the notion of what that amount might be

15   for, but I'll leave it up to the Court's discretion how to

16   handle it.

17             I considered making a Freedom of Information Act

18   request, but I'm unsure about how much I would get from that

19   if it's personnel records or if it categorizes one of the

20   exempt --

21             THE COURT:  I don't know.

22             MR. STRELKA:  Yeah, I don't know, either.  I have no

23   other information on the subject.  And there we have it.

24             THE COURT:  Okay.  Let's talk about the 12(b)(6)

25   filed by Mr. Lyons and Mr. Steele.  Would you first like to

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   address the issue of the claim of absolute immunity in the

2   *Van de Kamp* case?

3       MR. STRELKA:  Sure.  *Van de Kamp* and *Imbler*, my

4   understanding, these cases are coming from litigants who are

5   alleging some sort of wrongful conviction.

6       THE COURT:  *Van de Kamp* involved a *Giglio* violation.

7       MR. STRELKA:  And in the course of their claims they

8   also alleged 1983 causes of action.  And in both cases it was

9   quite clear in those cases that the acts and/or omissions

10  that the plaintiffs were complaining of were strictly related

11  to decisions and discretionary acts made within the

12  functional scope of a prosecutor.

13      THE COURT:  For example, in *Van de Kamp*, the issue

14  was that the Commonwealth's Attorney or the prosecutor -- not

15  the Commonwealth's Attorney.  The prosecutor in that case

16  didn't engage in appropriate administration in training the

17  lawyers that he or she was supervising on what is required by

18  the Constitution in terms of discovery.  So, in other words,

19  in *Van de Kamp*, it's much more directly related to the issues

20  of what a prosecutor does.

21      MR. STRELKA:  How to be a lawyer.  How to be a

22  lawyer.  And --

23      THE COURT:  Whereas this case is --

24      MR. STRELKA:  Right.

25      THE COURT:  -- simply an employment situation.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1       MR. STRELKA:  It involves issues of absenteeism,

2   tardiness, insubordination.

3       THE COURT:  Leave.

4       MR. STRELKA:  Scheduled leave, yes.

5       And those issues are present with every single

6   employer in the Western District of Virginia this last week

7   with the snow.  I mean, these are fundamental, intrinsic

8   issues related to every single type of employment that I

9   could possibly hypothetically imagine.

10      So, you know, this case falls well outside of the

11  realm of the cases that indicate, you know, this functional

12  prosecutorial -- and it makes sense why they have that

13  absolute immunity, but not in this case.

14      THE COURT:  Let's talk about your other counts,

15  then.  Let's just assume for the sake of argument that *Van de*

16  *Kamp* and *Imbler* are distinguishable.  Let's talk about your

17  claims one by one.

18      Let's talk about your first claim.  And that is,

19  under 1983, for sex discrimination.

20      MR. STRELKA:  Yes.

21      THE COURT:  One argument Mr. Keuling-Stout makes

22  here is, based on the case law, that you never filed a charge

23  of discrimination under Title VII.

24      What is your response to that?

25      MR. STRELKA:  First off, there's not enough

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   employees under this employer to be actionable, to have

2   jurisdiction under Title VII; so there's that.  But there's

3   also the *Booth* case from the Fourth Circuit.

4           THE COURT:  Well, now, wait a minute.  Wait a

5   minute.  Aren't you hanging yourself on the horns of a

6   dilemma here, Mr. Strelka?  Because if, indeed, Ms. Wilcox,

7   as you allege, is a county employee or if there's a joint

8   employer --

9           MR. STRELKA:  Right.

10          THE COURT:  -- wouldn't there be enough employees in

11  the whole county?

12          MR. STRELKA:  In fact, we did file an EEOC charge

13  against the county, Your Honor.  We did.

14          THE COURT:  Against the county?

15          MR. STRELKA:  Against the county, yeah.

16          THE COURT:  Okay.

17          MR. STRELKA:  And so but based on --

18          THE COURT:  This is kind of fun, Mr. Strelka.

19          MR. STRELKA:  It is.  I understand.  It is.  And I

20  find this case to be very interesting from a legal

21  perspective.  And we're only trying to do the best we can to

22  cover the bases of our client with reason.

23          THE COURT:  Okay.  So let's assume for the sake of

24  argument Title VII doesn't apply.  Because you haven't

25  alleged Title VII.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

 1          MR. STRELKA:  Right.

 2          THE COURT:  You've alleged a 1983 violation for sex

 3    discrimination.  Right?

 4          MR. STRELKA:  Right.

 5          THE COURT:  Tell me why that -- what aspect of this

 6    pleading gives rise to a claim that the actions taken against

 7    Ms. Wilcox were done on the basis -- were improper and done

 8    on the basis of her gender and that men were treated

 9    differently.

10          MR. STRELKA:  Sure.  Well, first and foremost, I

11    just want to say out of the gate that the case has stronger

12    implements that support retaliation as opposed to sexual

13    harassment.  The sexual harassment itself, though --

14          THE COURT:  No, no, I'm talking about Count One, sex

15    discrimination.

16          MR. STRELKA:  I'm sorry.  I'm sorry.

17          THE COURT:  We haven't even gotten to Counts Two,

18    Three, Four yet.  Count One.

19          MR. STRELKA:  I misspoke.  Sexual discrimination,

20    that she was treated differently than similarly situated male

21    employees.  You know, the facts are what the facts are.

22          THE COURT:  You allege in paragraph 105 that -- I

23    mean, that is purely conclusory.  Paragraph 105 of your

24    pleading says -- no, I'm sorry, it's 95.  I'm sorry.  I got

25    my 5s wrong.  "Similarly situated male employees did not have

26

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   to endure the discriminatory treatment that Ms. Wilcox

2   endured."

3          That is conclusory.  And where are the facts to

4   support any allegation that there is disparate treatment on

5   the basis of gender?

6          MR. STRELKA:  Right.  What I can point to in the

7   complaint are her complaints regarding what occurred in the

8   office on November 30, 2015:  Not being taken seriously; not

9   being given thoughtful consideration; there being no

10  meaningful discipline or investigation into Mr. Steele's

11  conduct; and just an overall flippant response to any of this

12  moving on.

13         You know, there aren't many employees there; it's a

14  small employer.  And with small employers, I've always found

15  it to be much more difficult regarding sexual discrimination

16  complaints because things are more personalized.

17         And the facts are what the facts are.  I can't add

18  anything other than what I've said and what the Court has

19  already mentioned.  If the Court finds it insufficient, we'll

20  look back -- with leave of the Court, look back to see if

21  it's possible to amend to resuscitate.  But as it relates to

22  sex discrimination, that's just what I had to do.

23         THE COURT:  Let's talk about Count Two, then.

24         MR. STRELKA:  Okay.  Which one?  I've got the

25  complaint right here.  Count Two.

27

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1        THE COURT:  Count Two is retaliation.

2        MR. STRELKA:  Yes.  So we allege in paragraphs 35

3   and 36 that she's making complaints to Mr. Lyon -- Mr. Lyons

4   regarding what has occurred and that explains --

5        THE COURT:  Right, I understand that there was this

6   issue on November 30th.  Okay.  Where's the causal link

7   between what happened then and the adverse employment action,

8   which was her termination?

9        MR. STRELKA:  Sure.  Temporal proximity.

10       THE COURT:  Yeah, but temporal proximity, it's

11  months later.

12       MR. STRELKA:  Right, it's November 30, 2015, and

13  then she's terminated on December 17, 2016.  But one of

14  her --

15       THE COURT:  No, no.  No, she's not.

16       MR. STRELKA:  February 17.

17       THE COURT:  It's not December.

18       MR. STRELKA:  I threw a 1 in front of a 2, for

19  whatever reason, in my head.

20       THE COURT:  It's February of '16, so there's three

21  months.  Okay?

22       MR. STRELKA:  Sure.  Yeah, but also --

23       THE COURT:  Where's the causal link?

24       MR. STRELKA:  Hold on.  I'm getting there.

25       We also have later on in paragraph 36 is December

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   1st, 2015, is an additional protected act.  So that takes us

2   into the month of December.

3        THE COURT:  Right.  Ms. Wilcox, she leaves work, she

4   sends the e-mail, and, you know, even though -- let me just

5   be clear on something.  I'm not considering any of the

6   extraneous things that Mr. Keuling-Stout filed in this case,

7   all right, including the affidavit of Mr. Lyons that was

8   embedded in his brief.  Okay?

9        MR. STRELKA:  Uh-huh.

10       THE COURT:  I'm not considering any of that.

11  Although, one could argue paragraph 35 renders the e-mail

12  fair game.  Okay?

13       MR. STRELKA:  Right.

14       THE COURT:  Because you mentioned the e-mail,

15  therefore, one could argue it renders it fair game.  I'm not

16  considering any of those attachments.  We're here at the

17  pleading stage.

18       MR. STRELKA:  Right.

19       THE COURT:  So let's stay on the pleading.

20       MR. STRELKA:  Right.  So we have a protected

21  activity in December of 2015.

22       THE COURT:  And what is that?

23       MR. STRELKA:  Paragraph 36, she has a --

24       THE COURT:  Okay.  Right, she's concerned because

25  Mr. Steele hit her --

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1          MR. STRELKA:  Yes.

2          THE COURT:  -- and grumbled something about women.

3    That's what the allegation is.  Don't even know exactly what

4    it was, but he hits her and grumbles something about women.

5    Right?

6          MR. STRELKA:  Right, yes.  Yes, and that there

7    was --

8          THE COURT:  Okay.  And you don't allege what he

9    says.

10         MR. STRELKA:  No.

11         THE COURT:  Because she doesn't know what he said.

12         MR. STRELKA:  No.  We know he said something about

13   women, punched her, and then there was a comment from another

14   individual that there was hostility toward women.

15         And what she complains about on December 1st,

16   according to paragraph 36, to discuss her e-mail and the

17   incident, expressed how she felt the Carroll County

18   Commonwealth's Attorney tolerated sexual discrimination

19   against women.

20         So that's a protected act under the law on December

21   1st, 2015.  And --

22         THE COURT:  And where is the causal link between

23   that and the termination for failing to comply with the leave

24   policy and the insubordination when she wouldn't sign the

25   written reprimand?

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1        MR. STRELKA:  It stands outside the boundaries that

2   that would actually ever be insubordination.  Here she is,

3   she's an educated attorney; he indicates to her regarding

4   this disciplinary action that there's a common work policy

5   that's at play.  She asks to review the policy.  And

6   immediately thereafter, he terminates her, within seconds or

7   minutes.

8        And all of that, from our perspective, indicates

9   that there was a -- he was waiting for a reason.  He was

10  looking.  He seized upon this moment.

11       You know, I'm not contesting tardies or

12  absenteeisms.  She wasn't terminated for that.  She was

13  terminated for insubordination and having a conversation with

14  your boss in which you're exploring -- again, she wasn't even

15  contesting the tardies or absenteeisms.  She was asking about

16  policy itself, which is a very normal -- it's a reasonable

17  question and one that wouldn't seemingly violate any policy

18  that the employer would have or could have.

19       THE COURT:  She's an at will employee.

20       MR. STRELKA:  Sure.

21       THE COURT:  And -- okay.  No, I understand.  I

22  understand your argument.  I just wanted to know if there was

23  something more.  What you're simply arguing is that it comes

24  three months later?

25       MR. STRELKA:  Yes, it comes in two and a half.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1      THE COURT:  Okay.  Is there any other linkage at all

2  between the termination events, the leave issue and the

3  written reprimand?  And all that happens like right there.

4  It comes to a head --

5      MR. STRELKA:  Right.

6      THE COURT:  -- and he stands up, turns his back, and

7  says, "You're fired."  Is there any other linkage other than

8  the fact that it's three months after this November

9  30/December 1 episode with Mr. Steele?

10      MR. STRELKA:  Respectfully, Your Honor, I'll

11  characterize it as two and a half months.  We might be

12  parsing things a little too far there, but the -- so we have

13  two and a half months between the December -- the December

14  conversation and when she's terminated on February 17.

15      THE COURT:  I'll give you that, Mr. Strelka.  It is

16  something in the nature of 75 days or so.

17      MR. STRELKA:  I want all the temporal proximity I

18  can grab here, Your Honor.  But it is that, it's the temporal

19  proximity, and the fact that there's no legitimate reason for

20  anyone to terminate someone for asking the question that she

21  asked.

22      THE COURT:  Okay.  All right.  I think I understand

23  your argument on Count Two.

24      Count Three alleges hostile work environment.

25      MR. STRELKA:  Right.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1     THE COURT:  Okay.  And you know what the case law is
2  as well as I do.  It's got to be severe or pervasive.
3     MR. STRELKA:  Right.
4     THE COURT:  And all you allege is one hitting
5  episode.
6     MR. STRELKA:  True.
7     THE COURT:  Okay?
8     MR. STRELKA:  Yeah.
9     THE COURT:  You would agree with me that under the
10  case law that is neither severe nor pervasive?
11     MR. STRELKA:  I'll say, though -- Your Honor, I
12  apologize because the case, the name skips my memory at this
13  moment, but it was the case that I believe Judge Moon had
14  that was reversed by the Fourth Circuit.  I know the facts
15  differed slightly, but it was an incident in which the
16  employee was assaulted once, and I believe Judge Moon
17  dismissed it on a 12(b)(6), and the Fourth Circuit said that
18  it was sufficient.  The assault in that case had a more
19  sexual connotation than the assault here.
20     THE COURT:  There's nothing sexually related to
21  this.  She said he punched her and she says, "Don't use me as
22  demonstrative evidence."
23     MR. STRELKA:  Right.  But whatever was uttered prior
24  to that punch was sufficient enough for a witness to state
25  that there's a hostile environment here, hostile toward

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   women.  Her name escapes me right now, but I'll get right

2   back to it.  Hold on.

3            THE COURT:  Ms. Spangler.

4            MR. STRELKA:  Yes.

5            THE COURT:  Well, I mean, I'm trying to understand

6   paragraph 30.  "Ms. Wilcox directed her attention to

7   Ms. Spangler and exclaimed that there was hostility in the

8   room against women."

9            I read this as saying Ms. Wilcox said --

10           MR. STRELKA:  I'm sorry, Your Honor.  I misread

11   that.  I apologize.

12           THE COURT:  -- there was hostility in the room.

13           MR. STRELKA:  I strike that.  I strike that.  Sorry.

14           THE COURT:  That's the way I read it.

15           MR. STRELKA:  Right.

16           THE COURT:  Okay.

17           MR. STRELKA:  I've been covering too much for snow

18   days, Your Honor.

19           THE COURT:  Am I reading that wrong?

20           MR. STRELKA:  You're reading that correctly.

21           THE COURT:  Okay.  All right.  Okay.  The Judge Moon

22   case, is that *Davis*?

23           MR. STRELKA:  I believe so.

24           Your Honor, as it relates to severe and pervasive

25   activity, it's a very high --

34

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1          THE COURT:  I understand the case law.  One episode,

2     okay, one incident can be so severe that it gives rise to a

3     hostile work environment.  You hang a noose in a locker room,

4     you sexually molest another person, one episode counts.

5          MR. STRELKA:  Right.

6          THE COURT:  The question is whether this episode --

7          MR. STRELKA:  Right.

8          THE COURT:  -- is so severe in and of itself.

9     Because you don't allege a lot of pervasive stuff.  All you

10    allege is, well, he became distant from her, right?

11         MR. STRELKA:  Right.

12         THE COURT:  Okay.

13         MR. STRELKA:  Right.  And that the battery occurred

14    within some context of a discussion regarding gender.

15         THE COURT:  Something about Thanksgiving.

16         MR. STRELKA:  And turkey.

17         THE COURT:  Okay.  Let's talk about Count Four.

18         MR. STRELKA:  Sure.  Is that the --

19         THE COURT:  That's your due process liberty

20    interest.  And the question I have for that is:  Where is --

21    where is the -- it looks to me like under the *Sciolino* case,

22    the Fourth Circuit, that there's got to be some false

23    statements made by Mr. Lyons about Ms. Wilcox publicly.

24         MR. STRELKA:  Yeah, right.

25         THE COURT:  And where's the public here?

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1          MR. STRELKA:  Your Honor, I may have to -- I may

2    have to -- because this has occurred, and I may have to amend

3    to be more specific here.  But first and foremost, the

4    *Sciolino* case involved false statements that were placed in

5    the personnel file.

6          I don't have the personnel file currently, but we do

7    know that the termination was categorized as insubordination.

8          Now, before I jump into this issue, I just want to

9    highlight something under state code, a case that just gets

10   hot under everyone's collar.  And that's 60.2-623.  That's

11   the state code that talks about information from VEC hearings

12   being barred from judicial proceedings.

13         THE COURT:  I understand.

14         MR. STRELKA:  Okay.  That code section --

15         THE COURT:  We've looked at that section.  We have.

16         MR. STRELKA:  Yes, that code section specifically

17   excludes information that's gathered during the fact-finding

18   interview, the first-level appeals, and the commission

19   appeals.

20         This case proceeded on an appeal by -- under

21   different counsel, by Mr. Lyons to the Circuit Court of

22   Carroll County, where she works; and in that appeal, argued

23   by Michael Bedsaul, the Commonwealth Attorney accusing my

24   client of insubordination.  And they had a special judge

25   brought in because of, you know, the situation.  And so this

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    was publicly declared in Circuit Court.  There are case

2    documents that said she was insubordinate that had been filed

3    in the Circuit Court where she works.  So that is a public

4    statement from that office that my -- a false statement, that

5    my client engaged in insubordination.  And she won that, by

6    the way.  They said she was guilty of misconduct vis-a-vis

7    insubordination.

8              THE COURT:  So you're saying that statute would not

9    bar consideration for the matter that took place in the

10   Circuit Court?

11             MR. STRELKA:  I read it three times today, and I

12   don't believe so.  And I'd be happy -- I mean, I'm always

13   willing to be corrected.  You know, I've read it, and

14   specifically it says -- it specifically bars information

15   from, and then it lists the three proceedings and the code

16   sections that regard those three proceedings:  The

17   fact-finding interview, the first-level appeals, the

18   commission appeals.  It says --

19             THE COURT:  It says any judicial or administrative

20   proceeding.

21             MR. STRELKA:  That's regarding information from

22   those proceedings.

23             THE COURT:  "Neither such information nor any

24   determination or decision rendered under 619, 620, or 622

25   shall be used in any judicial or administrative proceeding."

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1        So you're saying --

2        MR. STRELKA:  Circuit Court.

3        THE COURT:  -- Circuit Court is excluded from that?

4        MR. STRELKA:  It's a court of public record.  Anyone

5 can walk down there today, go in there, and get all that

6 information, everything that's filed.

7        THE COURT:  Okay.  I appreciate your argument on

8 that.  I'll have to study that.

9        MR. STRELKA:  Okay.  That was the basis --

10        THE COURT:  Of course, you haven't pled that.

11        MR. STRELKA:  I know.  To be honest, I was sheepish

12 at the time when writing the complaint about the

13 confidentiality and privacy angle of the VEC statute.  I

14 wanted to be -- I didn't want to violate anything.  But I've

15 gone back and I've read it and I think we're in the right.

16        THE COURT:  Yeah, I'd have to go back and look at

17 what those three particular statutory provisions mean.  But

18 regardless, you didn't plead it.

19        MR. STRELKA:  I understand, but I can.

20        THE COURT:  Okay.

21        MR. STRELKA:  I'll just add it.

22        THE COURT:  All right.  What else would you like to

23 argue, Mr. Strelka?

24        MR. STRELKA:  Oh, let me look.

25        Yeah, the cases cited on the -- regarding wrongful

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1  conviction and very much enhance the prosecutorial role.

2          I have some on qualified immunity but the only thing

3  mentioned in it is not really probative at this stage.  I

4  don't have --

5          THE COURT:  Hold on a second, Mr. Strelka.

6          MR. STRELKA:  Yes.

7          THE COURT:  Sorry for that.  I had to confer with

8  my -- with the brains in the operation.

9          MR. STRELKA:  I understand.

10         Your Honor, unless you have any further questions, I

11 don't have anything else to say other than we'd ask for leave

12 to amend if the Court would find the counts insufficiently

13 pled.

14         Thank you.

15         THE COURT:  Okay.  Thank you, Mr. Strelka.

16         Ms. Royer, would you like to say anything else?

17         MS. ROYER:  I have one hopefully brief point to

18 make, Your Honor.

19         The only point that I'd like to make is with respect

20 to counsel's request for discovery, and that's that no amount

21 of discovery will change the law in this case.

22         And when we were looking at the *Butler* factors and

23 looking at state code, the law is clear that the county does

24 not have the ability to control the employment decisions made

25 by constitutional officers.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1      If the Court looks at Virginia Code Section

2  15.2-1600B, it states -- and by the way, this is the section

3  dealing with those constitutional officers.  It states,

4  "Nothing in this title shall be construed to authorize the

5  governing body or the chief administrative officer of a

6  locality to designate and elect a constitutional officer to

7  exercise a power or perform a duty which the officer is not

8  required to perform under applicable state law without the

9  consent of such officer" -- and I'd like to emphasize -- "nor

10  by designation to diminish any officer's powers or duties as

11  provided by applicable state law, including the power to

12  organize their offices and to appoint such deputies,

13  assistants, and other individuals are as authorized by law

14  upon the terms and conditions specified by such officers."

15      So this code section prescribes the county's ability

16  to make any kind of decisions for employment with respect to

17  any of the constitutional officers or employees.

18      So no amount of discovery as to what -- some sum of

19  money designated in a line item on a budget will change the

20  law with respect to whether or not the county can control the

21  decision-making of the constitutional officers in this

22  regard.

23      Thank you.

24      THE COURT:  Mr. Keuling-Stout, any additional

25  argument you'd like to make, sir?

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1     MR. KEULING-STOUT:  Your Honor, the reason that I

2  put in the information which you said you were not going to

3  look at or concern, think about, I do want to say that the

4  reason I have that in there is Rule 8(c)1, which says, "In

5  responding to a pleading, a party must affirmatively state

6  any avoidance or affirmative defense, including," and it goes

7  down to a line.

8         So my understanding of this -- and I looked at some

9  cases that would indicate -- you do have to do affirmative

10 defenses.  And so what I was putting in there was affirmative

11 defenses.

12        THE COURT:  Well, that's fine.  And you're entitled

13 to do that, but I'm just not going to consider it on

14 12(b)(6).

15        MR. KEULING-STOUT:  I understand, but that's the

16 reason I put it in there.

17        And also, when we talk about the senior -- the

18 Commonwealth's Attorney, what he was attempting to do in

19 writing and agreeing to was so that he could get -- she could

20 do it now but not any time more.  And what he was attempting

21 to do was to get Ms. Wilcox to do what needed to be done.

22 And what needed to be done was so that she wasn't the only

23 person who just said, Oh, I'm not going to go today, because

24 the others, all four of them, they had children, and they

25 couldn't either.  If all of them just decided, Oh, I'm not

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    going to be there today, there would be nobody left to be

2    able to go to the -- to the -- to do their work in the

3    Circuit Court and in the -- what is it?  The Circuit Court,

4    and then there's one --

5              THE COURT:  Juvenile domestic.

6              MR. KEULING-STOUT:  Yeah, juvenile domestic, to do

7    this work that had to be done.  And so then she wasn't doing

8    it, and she was giving it to them, and that's what it was all

9    about.

10             And she could be -- there's nothing more than the

11   administrative part that he was concerned about.  And part of

12   the administration was, yes, she was eight times or something

13   more than she should have been, and there were all times when

14   she could leave, and she did leave.  And so he was trying to

15   figure out:  What am I going to do?  I've got four people

16   here.  I've got lots to do.  There's lots to be done.  And if

17   she's going to say, Oh, oh, oh, then he's going to say,

18   Goodbye.

19             THE COURT:  Thank you, sir.

20             Mr. Strelka?

21             MR. STRELKA:  If the Court is of the mindset to

22   dismiss the county from this case, I would just ask that the

23   Court do so without prejudice.  If this case were to proceed

24   through discovery with the Commonwealth Attorney, it may --

25   you know, I don't know the future.  I don't have a crystal

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    ball.  But there may be information in discovery in the

2    Commonwealth's Attorney case that could shed light onto the

3    county's role, if there is such a role.

4           So I would ask that in the order, if the Court was

5    going to dismiss the county, that it be without prejudice.

6           Thank you.

7           MR. KEULING-STOUT:  Your Honor, could I have one

8    more sentence?

9           THE COURT:  Come on up.

10          MR. KEULING-STOUT:  The purpose of the cases talking

11   about absolute immunity, it is my understanding that you

12   address the absolute immunity at the 12(b)(6) level.

13          THE COURT:  I understand that.  I understand that.

14          All right.  The Court is prepared to rule as

15   follows:  First, I'm granting the 12(b)(6) by Carroll County,

16   and I'm granting that with prejudice.

17          The allegations in this case are insufficient to

18   meet the joint employer test under the *Butler* case, 793 F.3d

19   404, 413 (4th Cir. 2015).

20          While, to be sure, the issue of a joint employment

21   is a fact-intensive inquiry, there are insufficient facts

22   alleged here.  And, in fact, it would be impossible to allege

23   facts sufficient to meet the joint employer test here, given

24   the statutory construct that exists providing for the county

25   to provide space and some sort of salary for the

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   Commonwealth's Attorney.  But the Commonwealth's Attorney is

2   a constitutional officer, and there's no allegation here of

3   any authority to hire or fire, no allegation of any

4   day-to-day supervision, including employee discipline.

5        There's an allegation of some salary paid under

6   Virginia law.  That's plainly insufficient as a matter of

7   law.

8        The facts alleged belie any claim that the county

9   would have had any responsibility in this case with regard to

10  the adverse employment action taken.  The allegation is, in

11  fact, that the Commonwealth's Attorney stood up, turned his

12  back, and said, "You're insubordinate; you're fired."  No

13  allegation that the county had anything to do with it.

14       This case is very much like, in fact, doesn't even

15  rise to the level of that decided by Judge Dillon in the

16  *Leuenberger versus Spicer* case, L-E-U-E-N-B-E-R-G-E-R, 2016

17  WestLaw 355090, decided on January 28, 2016 by this court.

18       There they said, well, yeah, county provides some

19  space, county provides some salary supplementation.  And

20  Judge Dillon correctly dismissed that case.

21       I'm granting the 12(b)(6) by Carroll County.  I

22  find -- and I'm not giving the plaintiff leave to amend.  I

23  find any amendment would be futile because it would be flat

24  inconsistent with the other allegations in this case.

25  Carroll County is out.

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1          Now, as to Mr. Lyons and Mr. Steele, again, I'm not

2     considering the evidence submitted by Mr. Lyons and

3     Mr. Steele with the affidavits embedded into the brief.

4          Count One, gender discrimination.  The allegations

5     fail to make a prima facie case.  I'm dismissing Count One.

6          In particular, there is no sufficient allegation

7     that the employer treated similarly situated employees

8     outside of a protected class more favorably.  That is

9     required for a prima facie case of gender discrimination, and

10    there is no sufficient factual allegations here.  All there

11    is is the allegation of paragraph 95, which is entirely

12    conclusory, that says similarly situated male employees did

13    not have to endure the discriminatory treatment that

14    Ms. Wilcox endured.

15         No facts in this 155 paragraph complaint suggest any

16    disparate treatment in favor of men in this case.  The

17    complaint is simply devoid of any facts suggesting that the

18    termination was based on gender.  There's nothing to suggest

19    it was based on gender or that male employees were allowed to

20    exceed the leave policy without getting a reprimand.

21         I dismiss Count One, but I grant leave to amend.

22    I'm going to give leave to amend as to Count One.

23         Retaliation, Count Two.  Now, there is

24    insufficient -- I'm dismissing Count Two.  There is

25    insufficient causation as a matter of law between the

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    November 30th, 2015 punch episode and the termination.  They

2    are on the face of the allegations completely unrelated.

3    There's nothing at all linking them except for two and a half

4    months, and that's not even a temporal link.  There's nothing

5    here to link that one episode that took place in November of

6    2015, and the e-mail that afternoon and a meeting the next

7    day, with the termination that happens later on in February.

8    Nothing.  Zero.  Zip.

9         I am going to -- I'm going to dismiss Count Two,

10   retaliation.  I'm going to grant leave to amend.

11        Count Three, hostile work environment.  The episode

12   on November 30th, 2015 is the only act alleged of a hostile

13   work environment, except perhaps that maybe some folks were

14   distanced.  All right.  That is plainly not severe or

15   pervasive enough to create an objectively hostile or abusive

16   work environment under the law.

17        It's nothing like the *Davis* case that Judge Moon

18   had.  That was a case in which there was a grabbing of female

19   body parts.  And plainly that was a hostile work environment.

20        This is a punch, at most a punch to the shoulder, in

21   the context of a discussion about somebody else's family at

22   Thanksgiving and some sort of grumbled comment about women.

23   That one episode is not sufficient to give rise to a hostile

24   work environment claim.  I think it would be futile to allow

25   amendment.  I am not allowing amendment of the hostile work

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1  environment claim.  There's nothing in here that supports

2  anything remotely suggesting a hostile work environment.

3          Count Four, deprivation of liberty interest.  On its

4  face, and as Mr. Strelka conceded, there are insufficient

5  allegations that the Commonwealth's Attorney made the reason

6  for the termination -- insubordination -- public.  There is

7  this statutory confidential procedure that Mr. Strelka says

8  does not apply to what may have happened at the Circuit Court

9  of Carroll County.  And I'm going to give him leave to amend

10  Count Four.  I am going to dismiss Count Four.  It's

11  insufficiently pled.

12          Now, with regard to the part of the allegation where

13  he alleges that one prospective employer has inquired into

14  her personnel file, well, that's not sufficient under the

15  *Sciolino versus Newport News* case out of the Fourth Circuit,

16  S-C-I-O-L-I-N-O, 480 F.3d 642, 649.  You've got to allege

17  more than just a personnel file might have been available.

18  There's no allegation that the Commonwealth Attorney in this

19  case has a practice of releasing personnel files.  I can't

20  imagine anyone does.  And there's no allegation that the

21  Commonwealth's Attorney was likely to release the personnel

22  file.  So just putting information in a personnel file of

23  insubordination is not enough.

24          I don't know about the Carroll County public Circuit

25  Court hearing, and I'm going to give Mr. Strelka leave to

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   amend Count Four as to that.

2          Count Five, common law battery against Mr. Steele,

3   at least at this point I'm going to continue to exercise

4   supplemental jurisdiction over that.  If, however, I dispose

5   of the rest of this case, either at another Rule 12(b)(6) or

6   at a Rule 56, I am likely to -- I'm not going to hang on to

7   this case if all there is is Count Five, common law battery.

8   Okay?

9          Now, let's talk about immunity for a minute.  I

10  don't agree with Mr. Keuling-Stout that absolute immunity

11  applies.  I believe absolute immunity under the *Van de Kamp*

12  case applies when the Commonwealth's Attorney is performing

13  traditional functions of an advocate.  And *Van de Kamp* was

14  about discovery and complying with the constitutional

15  requirements of *Giglio*.

16         In fact, there's a paragraph in the *Van de Kamp*

17  decision which seems to suggest that that sort of absolute

18  immunity doesn't apply to the kind of allegations that are

19  here.

20         In that case, the Court said at page 344, "The types

21  of activities on which Goldstein's claim focus necessarily

22  require legal knowledge and the exercise of related

23  discretion, e.g., in determining what information should be

24  included in the training or the supervision or the

25  information system management."

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1      Again, the issue in that case was compliance with

2  *Giglio*.  What was the prosecutor required to train his staff

3  about; that was the aspect of administration that was at play

4  in *Van de Kamp*.

5      That's a far cry different from what's at issue in

6  this case.

7      And listen to what the next line of *Van de Kamp*

8  says.  "And in that sense, also Goldstein's claims are unlike

9  claims of, say, unlawful discrimination in hiring employees."

10      That line seems to suggest that absolute immunity

11  would not apply in this context, so I'm not going to -- I am

12  not going to find that absolute immunity applies.

13      Now, I will say this.  No one has raised qualified

14  immunity at this point.  I'm not going to rule on qualified

15  immunity because it has not been pled in this case.  And so I

16  am not going to rule on it because I don't think it's before

17  me.  No one has argued it.  No one has raised it in the

18  briefs, and I've read all the briefs.

19      So I do not believe this prosecutor is subject to

20  absolute immunity for making this non -- for making this

21  decision about employment outside the traditional function of

22  advocacy.  So I don't think absolute immunity applies, and so

23  I'm not going to find that.  Maybe the Fourth Circuit will

24  find me wrong, but I don't think so.  Well, you never know;

25  they might.  There's three of them and only one of them when

1    they get to think about these things.

2          So in sum, I'm going to do this.  I'm going to enter

3    an order dismissing the county from this case in its

4    entirety.  And I'm not granting leave to amend because it

5    would be futile.  And I'm doing it with prejudice because the

6    county ought not to be burdened with this litigation, because

7    there is no basis for suit against the county in this case.

8          I am dismissing the hostile work environment claim,

9    which is Count Three.  I am dismissing that claim with

10   prejudice, and I'm not granting leave to amend.  There is

11   nothing here that suggests there is anything -- anything --

12   that would come anywhere near an objectively hostile or

13   abusive work environment.

14         I am dismissing, however, without prejudice, Count

15   One, gender discrimination; Count Two, retaliation; and Count

16   Four, deprivation of liberty interest.  And I'm giving

17   Mr. Strelka leave to amend.

18         I'm going to give Mr. Strelka 14 days' leave to

19   amend his complaint as to those counts in this case.

20   Obviously, I haven't been asked to rule on Count Five, and

21   I'm not dismissing Count Five.

22         But I want to say this.  Okay?  And I'm going to put

23   this in my order.  I have a hard time seeing on the facts of

24   this case how -- and out of an abundance of caution, I'm

25   giving Mr. Strelka an opportunity to replead Count One, but I

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1    don't see it under the facts of this case, as I understand

2    it.

3          And on Count Two, the retaliation claim, I don't see

4    it under the facts of this case.  I just simply don't see

5    there being sufficient facts to allow this to go to a jury on

6    Count One or Count Two, unless there's something out there

7    that I'm not aware of.

8          Count Three is woefully inadequate, and I'm not even

9    giving him leave to amend on that.

10         Count Four is the claim about the liberty interest,

11   and I just don't know about that.

12         But I'm going to say this about Count One and Count

13   Two.  If Count One and Count Two are re-alleged in this case,

14   the sexual harassment -- excuse me, the retaliation based on

15   sex or gender and the gender discrimination case, I just

16   don't see that that is what is involved in this case based on

17   the allegations.  And if Counts One and Two are re-alleged

18   and they do not survive another Rule 12(b)(6) or a motion for

19   summary judgment, I'm going to entertain, as to those two,

20   sanctions for -- for attorney's fees and costs in defending

21   against Count One and Count Two, because we all have an

22   obligation under Rule 11 to make these pleadings in good

23   faith, either in accordance with the law or for extension of

24   the law; and I don't see how in this case any reasonable

25   argument can be made, unless there's some facts alleged that

Wilcox v. Lyons, et al., 7:17cv530, 3/22/18

1   I'm not aware of, as to how a claim is going to be able to

2   survive Rule 56 on Counts One or Two.  I just -- I don't see

3   it.

4            I'm not making that position -- I'm not taking that

5   position with regard to Count Four simply because I'm taking

6   Mr. Strelka at his word that that -- that these things were

7   said in Circuit Court, and we'll go there.

8            Count Three is gone.  Count Five remains.  And the

9   county is gone.

10           Okay.  I'm going to enter an order to that effect

11  just as soon as I can.

12           All right.  Anything further from you, Mr. Strelka?

13           MR. STRELKA:  No, Your Honor.

14           THE COURT:  All right.  Anything else from you,

15  Ms. Royer?

16           MS. ROYER:  No, Your Honor.

17           THE COURT:  And Mr. Keuling-Stout?

18           MR. KEULING-STOUT:  No, Your Honor.

19           THE COURT:  Okay.  Thank you all.  Ask the marshal

20  to declare a recess.

21  (Proceedings adjourned, 4:24 p.m.)

22                        CERTIFICATE

23     I, JoRita B. Meyer, certify that the foregoing is a
    correct transcript from the record of proceedings in

24  the above-entitled matter.
    /s/ JoRita B. Meyer                  Date: 1/11/2019

25